**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN D. GILES,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:26-cv1890 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **TVI, INC. d/b/a** | ) | |
| **SAVERS VALUE VILLAGE** | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| *Corporate Creations Network INC.* | ) | |
| *12747 Olive Blvd* | ) | |
| *Suite 300* | ) | |
| *Saint Louis, MO 63141* | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Kevin D. Giles ("Mr. Giles"), by and through his undersigned counsel, and against Defendant TVI, Inc. d/b/a/ Savers Value Village Inc. ("Defendant"), for unlawful sex discrimination (sexual orientation discrimination), unlawful retaliation for lawful protected activity in raising complaints with Savers management, and states as follows:

*Jurisdiction and Venue*

1. Plaintiff Kevin Giles is domiciled in Unincorporated Saint Louis County, Oakville, Missouri, in the Eastern District of Missouri.
2. Defendant is a Washington state corporation doing business in the state of Missouri as a foreign for-profit corporation.
3. Defendant has over 500 employees.

4. Plaintiff worked at two of Defendant's stores:

   a. The first was in Crestwood, Missouri; which is located in the Eastern District of Missouri.

   b. The second was in Ellisville, Missouri, also in the Eastern District of Missouri.

5. This is an action for unlawful discrimination because of sex, including sexual orientation, and unlawful retaliation, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4) and/or 42 U.S.C. § 2000e-5(f)(3).

7. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) because the unlawful employment practices alleged herein were committed at Defendant's stores in Ellisville and Crestwood, St. Louis County, Missouri.

**ADMINISTRATIVE EXHAUSTION**

8. On or about June 1, 2026, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 560-2026-03088, alleging discrimination because of sex and retaliation.

9. On August 5, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, which Plaintiff received on or about August 7, 2026. A true and accurate copy of the Notice is attached as Exhibit 1 and incorporated by reference.

10. Plaintiff filed this Complaint on November 2, 2026, within ninety (90) days of his receipt of the Notice of Right to Sue. Plaintiff has satisfied all administrative prerequisites and conditions precedent to filing this action.

11. On or about October 30, 2026, Plaintiff filed a second Charge of Discrimination with the EEOC 560-2027-00427 concerning Defendant's termination of his employment on or about October 2, 2026, and other acts occurring through October 2, 2026. Plaintiff will seek leave to amend this Complaint to add claims arising from that charge upon receipt of a Notice of Right to Sue.

**PARTIES**

12. Plaintiff Kevin D. Giles is citizen and resident of St. Louis County, Missouri.

    a. Plaintiff is not heterosexual and has identified as gay and bisexual.

    b. Plaintiff is biracial. He is White/European and Native American.

    c. Plaintiff lives with a disability.

13. Defendant is a Washington state corporation doing business in the state of Missouri as a foreign for-profit corporation.

14. Defendant is a subsidiary to the publicly traded company Savers Value Village, Incorporated (SVC).

15. At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b), and employed more than 500 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

16. At all relevant times, the store managers, district managers, regional director, and human resources personnel identified in this Complaint were Defendant's agents and employees acting within the course and scope of their employment.

## FACTS COMMON TO ALL COUNTS

**Plaintiff's Employment History and Performance Beginning at Crestwood Store**

17. Defendant hired Plaintiff on or about May 2015 as a CDC Supervisor at its Crestwood, Missouri store.
18. During Plaintiff's tenure with Defendant, Plaintiff learned every position in the production room at or above company standards.
19. Plaintiff received four performance reviews with no deficiencies.
20. Plaintiff received Defendant's service star award.
21. Defendant promoted Plaintiff to Recycle Lead on or about June 2020.
22. Defendant promoted Plaintiff to Community Donations Manager on or about August 2022.
23. In that role Plaintiff increased donation volume and raised donor satisfaction from approximately 65% to approximately 90%.
24. On or about May 2023, Defendant denied Plaintiff an internal promotion to Operations Manager, citing relatives who worked at his store.
25. Defendant's policy during May 2023 permitted relatives to work at the same location so long as they did not report to one another.
26. Plaintiff requested his relatives seek other employment; and were no longer employed by defendant as of July 2023.
27. Defendant instead hired an external heterosexual male candidate at a higher rate of pay and directed Plaintiff to train him.

28. Another associate production manager, was allowed to hire his three children to work in his department.

29. On or about December 2023, Plaintiff left Defendant to work as a store manager for another employer.

**B. Plaintiff Is Held to Different Standards at Ellisville**

30. On or about October 2024, Defendant rehired Plaintiff as a Production Manager In Training at its Ellisville store, under Store Manager Wade Baird.

31. Plaintiff was the only gay production manager at the Ellisville store.

32. The other Production Managers, Kristin McElroy and Rebecca Weber, were heterosexual women.

33. Mr. Baird permitted Ms. McElroy and Ms. Weber to direct Plaintiff's training and assign him work.

34. This prolonged Plaintiff's time in training status at a lower rate of pay.

35. Between January and March 2025, Plaintiff complained to Mr. Baird and to District Manager Stokes about the disparate treatment he was receiving.

36. Plaintiff completed his training on or about February 25, 2025.

37. On or about March 2025, District Manager Brook Stokes designated Plaintiff the lead production manager at the Ellisville, Missouri store effective April 14, 2025.

38. Mr. Baird then held Plaintiff to higher standards than he had applied to Ms. McElroy, a heterosexual female production manager who previously held the lead role.

39. Mr. Baird doubled Plaintiff's backstock production target.

40. Ms. McElroy had consistently missed Defendant's core production Key Performance Indicator ("KPIs") without consequence.

41. Mr. Baird also aligned the schedule of Ms. McElroy, with his own, and refused to extend the same arrangement to Plaintiff.

**C. Plaintiff's Complaints of Discrimination**

42. Approximately in March and April 2025, Plaintiff reported Mr. Baird's treatment to Defendant's Team Member Relations ("TMR").

43. Co-workers provided statements supporting Plaintiff's complaint.

44. On April 24, 25, 27, and 29, 2025, Plaintiff submitted written complaints to TMR Specialist Jennifer McMurtrie, including emails titled "Wade harassment/discrimination."

45. Defendant acknowledged that its investigation uncovered misconduct.

46. On or about July 2025, Defendant promoted Ms. McElory, a white heterosexual female lead Production Manager to Store Manager, despite her failure to meet Defendant's core production KPIs.

**Relevant EEOC Period from August 5, 2025, through June 1, 2026**

47. As the only remaining production manager at Ellisville during the summer of 2025, Plaintiff met or exceeded all of Defendant's production KPIs.

48. District Manager Steve Schweisthal acknowledged Plaintiff's performance in writing.

49. Mr. Baird knew that Plaintiff was struggling financially due to the burden of commuting to the store because of Plaintiff's disability.

50. On or about August 15, 2025, Mr. Schweisthal offered Plaintiff a transfer to the Crestwood store, which was closer to Plaintiff's home, but only on the condition that Plaintiff accept a "voluntary" demotion to Associate Production Manager.

51. Mr. Schweisthal knew Plaintiff faced financial hardship from his commute and told Plaintiff that this was the only offer he would receive.

52. Mr. Schweisthal informed Plaintiff that the demotion was interim and that Plaintiff would be restored to Production Manager.

53. Plaintiff reluctantly agreed.

54. On August 16, 2025, Mr. Schweisthal directed Plaintiff to send his acceptance from his personal email account rather than his company account.

55. The acceptance reflected a reduction from a salary of $65,000 per year to an hourly rate of $24 per hour with a guaranteed minimum of 45 hours per week.

56. This included a reduced benefit and bonus structure, and the loss of the production manager title.

57. Plaintiff began work at the Crestwood store as an Associate Production Manager on or about September 8, 2025.

58. On or about September 24, 2025, Mr. Schweisthal told Plaintiff that the Crestwood store could not afford a second production manager.

59. Afterwards, in late September 2025, Defendant hired Robert Bowman, a white heterosexual man, as a second production manager at the Crestwood store.

60. On or about September 2025, Defendant pressed Plaintiff to perform the duties of a vacant Community Donations Manager position without the corresponding title or pay.

61. Plaintiff declined.

62. On or about September 20, 2025, Production Manager Sharon Lohaus berated Plaintiff in front of the CDC team.

    a. Plaintiff reported the incident to Store Manager Gary Britton.

    b. Plaintiff reported the incident to Mr. Schweisthal.

    c. Plaintiff reported the incident to Regional Director Kim Barrett.

63. On or about September 24, 2025, Mr. Schweisthal questioned Plaintiff about his decision to contact Regional Director Barrett.

64. On or about December 12, 2025, Plaintiff asked to meet with Regional Director Barrett about his concerns.

65. On December 17, 2025, Plaintiff raised his concerns about discriminatory treatment and his demotion in a recorded Microsoft Teams meeting with Ms. Barrett.

66. Ms. Barrett declined to take any action to prevent the furtherance of the discrimination and harassment of Plaintiff.

67. Prior to February 2026, Plaintiff had received no corrective action in approximately ten years of employment with Defendant.

68. In February of 2026, Defendant attempted to issue Plaintiff an attendance write-up.

69. Plaintiff pointed out that the attempted write-up violated Defendant's own policies.

70. Defendant withdrew the write-up.

71. On or about March 2026, Defendant issued Plaintiff a written warning for "providing short, blunt responses," "seeming gruff," and comparing the performance of two team members.

72. On or about May 2026, a co-worker accused Plaintiff of calling her a derogatory name.

73. Defendant investigated and found the accusation to be false.

74. During the investigation, TMR Specialist McMurtrie referred to Plaintiff's prior complaints, "I already know you're always so detailed when you do these things."

75. This remark was made before Shari Legree, a district manager in training.

76. On or about May 12, 2026, ***despite finding the accusation false***, Defendant issued Plaintiff a final written warning, which acknowledged that Plaintiff had not called the co-worker any names.

77. Two days later on May 14, 2026, Ms. Lohaus removed Plaintiff and the co-worker who had falsely accused him from their regular duties and placed them side by side on the production line.

78. Ms. Lohaus displaced two trained team members to do so.

79. She also threatened Plaintiff with discipline for insubordination if he did not comply.

80. At the end of the shift, Ms. Lohaus requested Plaintiff to critique aforementioned accuser, in front of her, and the entire production team.

81. Plaintiff refused to do so.

82. On May 14, 2026, that same day, Plaintiff reported this assignment to TMR in writing as retaliation.

83. On or about May 15, 2026, acting Store Manager Legree asked Plaintiff to provide written statements regarding Ms. Lohaus's treatment of him, which Plaintiff provided.

**F. Plaintiff's EEOC Charge, Retaliation, and Termination**

84. On or about June 1, 2026, Plaintiff filed his Charge of Discrimination with the EEOC. See Exhibit 1.

85. On or about June 17, 2026, Defendant's managers announced a plan to reassign approximately 60% of Ms. Lohaus's Production Manager duties to Plaintiff.

86. This plan did not include the Production Manager title or pay.

87. Plaintiff objected to Ms. Legree and to District Manager Jason Fick.

88. On or about June 19, 2026, Mr. Fick endorsed the plan.

89. On August 5, 2026, the EEOC issued Plaintiff a Notice of Right to Sue.

90. On or about October 2, 2026, less than two months later, Defendant terminated Plaintiff's employment, purportedly because Plaintiff had asked his direct manager whether they should dispose of damaged product.

91. Previously, Defendant closed a store in Saint Charles County, Missouri in 2019, which was documented by local news, where shoppers were "stunned by a mountain of donated clothing piled into an open dumpster behind the store."[1]

92. Upon information and belief, Defendant has not terminated or demoted heterosexual managers for comparable conduct, including a heterosexual store manager who destroyed a shipment of product without being demoted or terminated.

93. Plaintiff's termination and the post-termination conduct described above are the subject of Plaintiff's second Charge of Discrimination. Plaintiff pleads them here as background and as evidence of Defendant's retaliatory animus, and will seek leave to assert claims based on the Second Charge upon exhaustion.

94. Defendant's stated reasons for its treatment of Plaintiff are pretextual to its unlawful harassment, discrimination, retaliation, and termination of Plaintiff's employment.

95. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, and made no good-faith effort to comply with Title VII, justifying an award of punitive damages.

96. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to:

   a. Lost wages and benefits, past and future, including the difference between his Production Manager compensation and his reduced compensation after the demotion;

   b. Emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life;

[1] See https://fox2now.com/news/st-charles-shoppers-stunned-by-sudden-closure-of-savers-store/ (assessed on November 2, 2026 at 11:46am).

c. Damage to his professional reputation and to his ability to secure comparable employment; and

d. Attorney's fees and costs incurred in seeking redress for Defendant's unlawful conduct.

**COUNT I**
**SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

97. Plaintiff restates and incorporates paragraphs 1 through 96 as if fully set forth herein.

98. Plaintiff is a homosexual/bisexual male and a member of a class protected by Title VII.

99. Plaintiff institutes this Count pursuant to 42 U.S.C. §2000e-2 (a)(1) of Title VII.

100. Plaintiff was qualified for, and performed well in, his positions as Production Manager and Associate Production Manager, meeting or exceeding Defendant's performance expectations.

101. Defendant discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of his employment because of his sex, including his sexual orientation, by, among other things:

a. Coercing Plaintiff into a demotion from Production Manager to Associate Production Manager, with a reduction in pay, benefits, title, and responsibilities, on or about August 15, 2025;

b. Failing to restore Plaintiff to Production Manager and instead hiring a heterosexual man into that position in or about late September 2025;

c. Subjecting Plaintiff to unwarranted discipline between February and May 2026, culminating in a final written warning; and

d. Reassigning a substantial share of a Production Manager's duties to Plaintiff without the corresponding title or pay in June 2026;

102. Similarly situated heterosexual employees, including the heterosexual female Production Managers at Ellisville and the heterosexual male hired as Production Manager at Crestwood, were treated more favorably than Plaintiff.

103. Plaintiff's sex via sexual orientation, was a motivating factor in Defendant's adverse employment actions, and Defendant's stated reasons for those actions are pretextual.

104. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

WHEREFORE, Plaintiff Kevin D. Giles prays for judgment in his favor and against Defendant on Count I, and requests the following relief:

a. A declaration that Defendant's acts and practices violated Title VII;

b. An award of back pay and lost benefits, with prejudgment interest, to make Plaintiff whole for the wages and benefits he would have received but for Defendant's unlawful conduct;

c. Reinstatement to the position of Production Manager or, in lieu of reinstatement, front pay;

d. Compensatory damages for emotional distress, humiliation, inconvenience, damage to reputation, and other non-pecuniary losses;

e. Punitive damages in an amount sufficient to punish Defendant and deter similar conduct;

f. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

g. Such other and further relief as the Court deems just and proper.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)**

105. Plaintiff restates and incorporates paragraphs 1 through 104 as if fully set forth herein.

106. Plaintiff engaged in activity protected by Title VII, including but not limited to:

a. Reporting mistreatment to his Store Manager, District Manager, and Regional Director in September 2025;

b. Raising concerns about his treatment and his demotion with the Regional Director on December 17, 2025;

c. Reporting retaliation to TMR in writing on May 14, 2026, and providing statements regarding disparate treatment on May 15, 2026; and

d. Filing his Charge of Discrimination with the EEOC on or about June 1, 2026.

107. Defendant knew of Plaintiff's protected activity.

108. Defendant took materially adverse actions against Plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination, including but not limited to:

a. The coerced demotion and pay reduction of August 2025 and Defendant's refusal to restore Plaintiff to Production Manager;

b. Mr. Schweisthal questioned Plaintiff about his contact with the Regional Director.

c. The attendance write-up attempt;

d. The subsequent written warning;

e. The final written warning even after the allegations concerning Plaintiff were determined to be unfounded;

f. The May 14, 2026, assignment placing Plaintiff beside the co-worker who had just falsely accused him; and

g. The June 2026 reassignment of Production Manager duties to Plaintiff without the corresponding title or pay.

109. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as shown by, among other things, their close timing.

110. The TMR Specialist's reference to Plaintiff's prior complaints during the investigation that preceded his final written warning.

111. Plaintiff did not have ***any*** discipline before Plaintiff's complaints.

112. Defendant's stated reasons for its adverse actions are pretextual.

100. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered the damages described above.

WHEREFORE, Plaintiff Kevin D. Giles prays for judgment in his favor and against Defendant on Count II, and requests the following relief:

a. A declaration that Defendant's acts and practices violated Title VII;

b. An award of back pay and lost benefits, with prejudgment interest, to make Plaintiff whole for the wages and benefits he would have received but for Defendant's unlawful conduct;

c. Reinstatement to the position of Production Manager or, in lieu of reinstatement, pay;

d. Compensatory damages for emotional distress, humiliation, inconvenience, damage to reputation, and other non-pecuniary losses;

e. Punitive damages in an amount sufficient to punish Defendant and deter similar conduct;

f. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

g. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**THE RAMSEY FIRM, LLC**

*/s/ Steven Alan Ramsey*
Steven Alan Ramsey, 67126MO
4240 Duncan Avenue, Suite 200
St. Louis, Missouri 63110
Telephone: (314) 246-0059
Ramsey@TheRamseyFirmLLC.com

Attorney for Plaintiff

**Exhibit 1 – EEOC Notice of Right to Sue, issued August 5, 2026 (Charge No. 560-2026-03088)**